UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JACKSON COUNTY BANK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MATHEW R DUSABLON, ) <br> ) <br> Defendant. ) <br> ) <br> ———————————————— <br> ) <br> MATHEW R DUSABLON, ) <br> ) <br> Counter Claimants, ) <br> ) <br> v. ) <br> ) <br> JACKSON COUNTY BANK, ) <br> ) <br> Counter Defendants. ) <br> ) | No. 1:18-cv-01346-SEB-MPB |

**ORDER DENYING DEFENDANT'S MOTION FOR RELIEF**

This cause is before the Court on Defendant Mathew R. DuSablon's Verified Motion for Relief, Dkt. 42, from this Court's Order on Plaintiff's Petition for Costs and Fees, Dkt. 25, pursuant to Federal Rule of Civil Procedure 60(b)(3). Defendant requests an evidentiary hearing on this motion. Dkt. 62.

For the reasons detailed below, we DENY Defendant's Motion for Relief. We conclude that an evidentiary hearing is not necessary in resolving the motion; therefore, this request is also DENIED.

1

*Background*

On February 28, 2018, Plaintiff Jackson County Bank ("JCB") initiated this action in Jackson Superior Court I (Indiana), charging Defendant with breach of a covenant not to compete, breach of fiduciary duty, and other business torts created by state and common law. Dkt. 1, Ex. A. As we have previously summarized:

> The complaint alleges that Plaintiff, a state-chartered bank, employed Defendant as an "Investor Services Officer." Dkt. 1 Ex. A, at 8 ¶ 5. Though Plaintiff is not itself a registered securities broker-dealer, it had entered into a third-party arrangement with a registered broker-dealer [INVEST Financial Corporation] to offer such services to its customers. *Id.* at 7 ¶ 4. By its terms, that arrangement was due to expire on January 16, 2018. *Id.* at 13 ¶ 32. Beginning in July 2017, one of Defendant's work assignments was to assist Plaintiff in locating a new third-party broker-dealer with which to enter into a similar arrangement, *id.* at 9 ¶ 15, and in establishing Plaintiff's investment business under the new arrangement. *Id.* at 13 ¶ 32. Over the ensuing six months, Defendant failed to do much of the work assigned to him and abruptly resigned his position on January 8, 2018. *Id.* at 13–14 ¶¶ 35–36. Plaintiff thereafter learned that Defendant had requested that his customer accounts be transferred from Plaintiff's former third-party broker-dealer into his own name, id. at 14 ¶ 38, and that he had, in fact, started a new business to compete with Plaintiff. *Id.* at 15 ¶¶ 41–42.

On May 2, 2018, Defendant removed this case from the Jackson Superior Court I purportedly invoking our subject matter jurisdiction, pursuant to 28 U.S.C. § 1331. Defendant essentially asserted that Plaintiff's Complaint implied that, in order for Defendant (a registered broker-dealer) to compete in violation of his employment agreement, Plaintiff (not a registered broker-dealer) must be engaged in securities transactions in violation of federal securities law, specifically the Securities Exchange Act. Dkt. 1, Ex. B. According to Defendant, the matter could not be adjudicated without reference to the Securities Exchange Act. He further asserted that "exclusive jurisdiction relating to [*sic*] the [Exchange] Act" is vested in the federal courts. *Id.* Finally, he argued

that application of the Securities Exchange Act and its related regulations would show that many of his alleged wrongdoings were actually acts required by federal securities rules. *Id.* Thus, according to Defendant's theory of jurisdiction, we had federal question jurisdiction based on the Securities Exchange Act claims.

Plaintiff promptly sought to remand this matter on May 11, 2018, based on the obvious: Plaintiff's complaint includes only state law claims. Dkt. 9, 10. We agreed with Plaintiff and rejected Defendant's attempted invocation of federal question jurisdiction because the case indisputably did not arise under federal law. We explained:

> This Court has subject matter jurisdiction of all civil actions "arising under" federal law. 28 U.S.C. § 1331. A cases "arises under" federal law if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial federal question." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983).

Dkt. 19, at 4. We reiterated the well-settled principle that "[a] suit arises under the law that creates the cause of action," further reminding Defendant:

> [T]he federal question must appear on the face of the plaintiff's well pleaded complaint. *Franchise Tax Bd.*, 463 U.S. at 9–10. "[A] plaintiff is [the] master of [its] own complaint and may seek to avoid federal jurisdiction by pleading only state law claims[.]" *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000) (citing *Franchise Tax Bd.*, 463 U.S. at 10). Removal is not defeated by the plaintiff's efforts to "artfully" plead its way around the essentially federal character of its lawsuit. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (citing *Franchise Tax Bd.*, 463 U.S. at 22).

*Id.* In applying the well-pleaded complaint rule, we rejected Defendant's invocation of federal question jurisdiction for the following reasons: Defendant conceded that a federal question was not pled in the Complaint; Plaintiff did not seek to enforce any liability or duty created by the Securities Exchange Act, and thus the exclusive federal

3

jurisdiction contemplated within this act was not implicated; and Defendant's preemption defense, which might ultimately prove successful, did not confer federal question jurisdiction. *Id.* at 6-9. We also noted that Defendant cited no legal support for his argument that all lawsuits between individuals in the security industry relating to competition must necessarily "arise under" the Securities and Exchange Act, nor did he present any legal analysis to explain the ways in which this case fit into the narrow circumstances established by *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)[1] (finding federal jurisdiction over a state-law action for quiet title to real property, which the federal government had seized from plaintiff and sold to defendant, when the validity of the seizure under federal law was "the only legal or factual issue contested in the case"). Dkt. 19, at 9.

We reiterated the well-settled legal proposition that, "a cause cannot be removed . . . simply because, in the progress of the litigation, it may become necessary to give a construction to the Constitution or laws of the United States[.]" *Id.* at 11. Noting that Defendant had ignored long-standing principles of the well-pleaded complaint rule and buried the relevant question of whether Plaintiff's Complaint was a creature of federal

---

[1] Defendant had cited to *Grable* but had not discussed or applied its holding. Per *Grable*, a substantial federal question is presented where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Defendant's Motion for Relief makes no reference to *Grable*, and, like his earlier briefs, this motion puts forth no effort into applying *Grable*'s "substantial federal question" rule.

law under a "blanketing snowfall" of explanations as to why federal law was relevant, we rejected that theory. *Id.*

Our Remand Order held that "clearly established law demonstrated that [Defendant] had no basis for removal," thereby rendering the removal "objectively unreasonable." *Id.* at 15. We thus deemed it appropriate to award Plaintiff a reimbursement of its costs and fees resulting from the wrongful removal, noting that the impropriety of which "was not a close question" based on Defendant's "obviously deficient arguments." *Id.* at 16. We directed Plaintiff to submit a list of its specific costs and fees, which it timely did. *Id.* at 17, Dkt. 22. Following our review of Defendant's objections to Plaintiff's assessment of its costs as well as a careful review of the reasonableness of Plaintiff's itemized costs, we entered our Order on Plaintiff's Petition for Costs and Fees ("Order on Costs and Fees") on July 19, 2018, requiring Defendant to pay to Plaintiff the amount of $9035.61, comprised of $8776 in attorney fees and $259.61 in costs. Dkt. 25.

On August 20, 2018, Defendant filed a Notice of Appeal challenging our Remand Order as well as the Order on Costs and Fees. Dkt. 26. On February 6, 2019, the Seventh Circuit's mandate dismissing the appeal was handed down, stating: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." Dkt. 32. The Seventh Circuit, however, did review and affirm our award of costs and fees, holding as follows:

> [W]e find no abuse of discretion, as we agree that DuSablon lacked an objectively reasonable basis to remove this case to federal court. The impropriety of removal, as the district court observed, was "not a close question." JCB did

5

> not plead any federal claim nor is any federal question apparent from the face of its complaint. *See Bastien v. AT&T Wireless Servs, Inc.*, 205 F.3d 983, 986 (7th Cir. 2000). The complaint is based entirely on state law and any potential federal defense cannot form the basis for removal. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 723 (7th Cir. 2017). DuSablon nonetheless argues that JCB's state law claims involve significant questions of federal securities laws. But DuSablon cannot manufacture a basis for removal by injecting federal issues into a case under these circumstances. *See Panther Brands, LLC v. Indy Racing League*, LLC, 827 F.3d 586, 589 (7th Cir. 2016) (holding in a breach of contract action that an allegation that a defendant violated federal statutes is insufficient to create subject-matter jurisdiction). This is particularly so because, as the district court observed, DuSablon cited no cases supporting his position nor attempted to apply controlling law[.]

*Jackson Cty. Bank v. DuSablon*, 915 F.3d 422, 424 (7th Cir. 2019). The Seventh Circuit also awarded the reimbursement to Plaintiff-Appellee of its costs and fees incurred in defending the appeal.[2]

Not easily persuaded of his errors, Defendant has let loose yet another volley in his legal skirmish with Plaintiff. Defendant, on July 19, 2019, filed his Motion for Relief, Dkt. 42, from our Order on Order on Costs and Fees, contending that Plaintiff has intentionally concealed relevant contracts that "make it clear that the claims asserted by the Plaintiff in their [*sic*] Complaint do contain federal questions of law, and as such, [Defendant did] objectively have a reasonable legal basis for filing to have this matter removed to federal court and he should not have had attorney fees and costs awarded

---

[2] On March 6, 2019, following the Seventh Circuit's issuance of its Mandate, Plaintiff submitted its bill of costs incurred in responding to Defendant's appeal. Without opposition from Defendant, we granted Plaintiff's requested costs and fees in accordance with the Seventh Circuit's decision. On April 16, 2019, we vacated that Order upon receiving notification that Defendant had objected to Plaintiff's bill of costs in the Seventh Circuit litigation, and that the Seventh Circuit had retained jurisdiction over the parties' disputed costs and fees arising in the appellate litigation. On April 22, 2019, the Seventh Circuit awarded Plaintiff $17,750 in fees and $416.99 in costs for appellate activity.

against him." We turn now to the question of whether Defendant at this late juncture should be relieved of the requirement that he pay Plaintiff's cost and fees, as we have previously ordered.

*Analysis*

I. **Standard of Review**

Defendant seeks relief under Federal Rule of Civil Procedure 60(b)(3), which provides, in pertinent part:

> [T]he court may relieve a party...from a final judgment, order, or proceeding for . . . (3) fraud (whether heretofore denominated intrinsic, or extrinsic), misrepresentation, or other misconduct of an adverse part[.]

Relief under Rule 60(b) "is an extraordinary remedy" only to be granted in "exceptional circumstances." *Davis v. Moroney*, 857 F.3d 748, 751 (7th Cir. 2017). The decision whether to grant relief is in the sound discretion of the district court. *Talano v. Northwestern Med. Faculty Found., Inc.*, 273 F.3d 757, 762 (7th Cir. 2001). To obtain relief under Rule 60(b)(3), Defendant must show: that (1) he maintained a meritorious claim at trial; and because of the fraud, misrepresentation or misconduct of the adverse party; (3) the party was prevented from fully and fairly preventing his case at trial. *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir.1995).

II. **Discussion**

A. *The Undisclosed Contracts*

Defendant argues that, on July 24, 2018, five days after we entered our Order on Costs and Fees, Plaintiff furnished "voluminous documents" to him including two contracts directly related to Defendant's employment with Plaintiff. Dkt. 42, at 4.

7

According to Defendant, these two contracts supplement the non-compete agreement furnished with the Complaint to govern the working relationship between Defendant, Plaintiff, and third party, INVEST Financial Corporation ("INVEST"). *Id.* at 5. Per Defendant's understanding of the Indiana Rules of Trial Procedure, Plaintiff was required to attach to its Complaint "all relevant contracts." *Id.* at 3. By failing to do so, Defendant asserts that Plaintiff intentionally concealed the contracts "until any matter relating to federal question was disposed of" to avoid revealing that a "federal question did exist on the face of the Complaint." *Id.* at 2.

The first contract supplied by Plaintiff is a "Subscriber Agreement" ostensibly between INVEST and Plaintiff. *Id.* at 5. Per that agreement, Defendant, as the investment representative for INVEST, was to be registered with the National Association of Securities Dealers[3] and thus subject to regulations under FINRA, the SEC, and the Gramm-Leach Bliley Act. *Id.* at 6. Defendant contends that the Subscriber Agreement thus shows that federal laws and regulations governed his conduct, not merely his non-compete agreement.[4] *Id.* at 6-7.

---

[3] The National Association of Securities Dealers is the predecessor to the Financial Industry Regulatory Authority ("FINRA"). FINRA is a non-governmental organization authorized by Congress to oversee the broker-dealer industry.

[4] Defendant also stresses that the Subscriber Agreement contains the following clause: "All disputes and controversies related to or in any way arising out of this Agreement shall be settled by arbitration before and under the rules of the National Association of Securities Dealers, Inc." *Id.* at 8. He says this clause "make[s] vehemently clear that JCB has subjected themselves [*sic*] to be regulated by FINRA in instances involving securities transactions and any other related involvement with securities, i.e. pursuing what JCB believes to be their property against DuSablon." *Id.* We infer from Defendant's arguments his belief that an agreement mandating FINRA arbitration establishes federal question jurisdiction. This is incorrect; mandatory FINRA arbitration does not provide an independent basis for subject matter jurisdiction. *See Magruder v. Fid. Brokerage Servs. LLC,* 818 F.3d 285, 288 (7th Cir. 2016). We also note that Plaintiff's

8

The second contract at issue is the employment agreement between INVEST and Defendant. Plaintiff is alleged to have intentionally concealed this contract, or at least known of its existence. That is the entirety of Defendant's claim. He does not explain this contract's provisions or their relevancy to his Motion for Relief. *Id.* at 6.

Defendant seems to argue that, had these contracts been disclosed, they would have shown the Court that he had an objectively reasonable basis for removal.[5] Specifically, he suggests that the contracts validate what could only have been argued but not proven at the time of the case's removal—that a review of federal securities law is necessary to understand the parties' duties within the securities industry. Accordingly, he asserts, it was objectively reasonable for him to believe federal subject matter jurisdiction existed.

Defendant's motion lacks any legal support for this theory. In lieu of a legal analysis, Defendant devotes the majority of his briefing to a series of accusations against

---

claims against Defendant arise entirely from the parties' non-compete agreement, not from the Subscriber Agreement, of which Defendant was not a party. Defendant presents no analysis as to how this clause augments the Subscriber Agreement (Plaintiff and INVEST) governing disputes arising out of or related to that contract to include *any* "instances involving securities transactions and any other related involvement with securities." If Defendant claims that this clause establishes the need to evaluate federal securities laws and regulations in adjudicating the parties' dispute, we disagree for the reasons previously explained in our Remand Order. That is insufficient to establish federal question jurisdiction.

[5] Defendant's briefs are filled with contradictory and confusing versions of the facts—for example, he insists that Plaintiff intentionally concealed contracts that were "unknown" to him, while simultaneously arguing that he dedicated ten years of his career to ensuring the parties were in compliance with those very contracts—as well conclusory statements of law that he simply states without explanation. Defendant's arguments are so muddled that is unclear whether he is at any given moment arguing that federal question jurisdiction does in fact exist, or that it does not exist but that it was reasonable for him to believe that it did.

Plaintiff and its counsel.[6] We thus adopt our prior rulings as well as those of the Seventh Circuit in denying Defendant's motion.

We pause before finalizing our holding here to address Defendant's sole ground for his averment that the contracts were "intentionally concealed" by Plaintiff. This theory rests on Defendant's construction of the Indiana Trial Rules of Procedure. According to Defendant, these rules require all "relevant" contracts to be attached to a complaint alleging breach of contract. Even if this were somehow an avenue to relief, it is a clear misrepresentation of the Indiana Trial Rules, which require that a complaint founded on written instrument to include a copy thereof. IND. R. TRIAL PROC. 9.2(A). A party alleging a breach of contract is thus required to include as a part of the complaint the contract alleged to have been violated. *Mechanics Laundry & Supply, Inc. v. Wilder Oil Co.*, 596 N.E.2d 248, 253 (Ind. Ct. App. 1992).

Here, Plaintiff's Complaint seeks to enforce the terms of its non-compete agreement with Defendant. This agreement was, indeed, attached to the Complaint. Plaintiff's Complaint does *not* seek to enforce or litigate the terms of the Subscriber

---

[6] Indeed, the core of Defendant's Motion for Relief charges Plaintiff with intentionally and fraudulently preventing him from litigating his claims. That motion along with his Motion for Evidentiary Hearing do little to convince us that Defendant can establish a legitimate basis for his belief that subject matter jurisdiction existed. Defendant's principal reason for seeking an evidentiary hearing is to prevent Plaintiff from "blocking DuSablon's access to yet another opportunity [] before an impartial tribunal, i.e., his due process rights," Dkt. 62, at 2. His other attacks against Plaintiff, its counsel, and the state court are unrelated to the underlying issue in the Motion for Relief. This Motion for Relief is *not* the appropriate setting in which to hash out whether the state court was wrong in its adjudication of the motions before it, nor to evaluate alleged threats made by Plaintiff's representatives to Defendant and his counsel. Defendant's motion is little more than a legal tirade based on irrelevant facts and erroneous legal theories. Worse, the tenor is a distraction from any legitimate substantive issues before us.

Agreement with INVEST or Defendant's employment agreement with INVEST. Perhaps these agreements will ultimately prove relevant to acquiring the full understanding of the scope of the relationship between the parties, but they are not the instruments upon which Plaintiff's claims are or were founded and thus Plaintiff had no duty to include them as a part of the Complaint.

This is Defendant's only basis for his claim that Plaintiff "intentionally concealed" the contracts until the matter was remanded. We are informed that Plaintiff did timely furnish the contracts upon Defendant's request (which he did not serve until after remand) in the course of discovery, i.e., the appropriate procedural mechanism enabling parties to seek and receive relevant documents. *See* IND. R. TRIAL PRO. 26(B).

Assuming *arguendo* Plaintiff had intentionally concealed the contracts, Defendant's Motion for Relief still must be denied. Because Defendant's motion recapitulates "legally deficient" arguments already rejected by this Court and the Seventh Circuit, this is, once again, "not a close question."[7] Specifically, Defendant's Motion for Relief, as with his claimed justification for removal, hinges on the relevancy of federal securities rules to the adjudication of this dispute, a review of which he claims will inculpate Plaintiff and exculpate himself. He argues that his "expectation was that JCB

---

[7] As Plaintiff acknowledged, a Motion for Relief is not an opportunity to merely relitigate already adjudicated arguments. *Parker v. Loyal*, No. 115CV00826JMSTAB, 2017 WL 2533697, at *4 (S.D. Ind. June 12, 2017) (*citing Chelmowski v. AT&T Mobility, LLC*, 2017 WL 887518, at *1 (7th Cir. Mar. 2, 2017) (affirming a district court's denial of a Rule 60(b) motion where the "motion was nothing more than an effort to relitigate matters" that had been conclusively resolved)). In response, Defendant broadly asserts that the issues were not litigated, disregarding what are, in fact, recapitulations of his earlier justifications for removing the matter.

would argue 'how' the Exchange Act and FINRA applied in the instance at hand in prosecuting its Motion for Remand." Dkt. 47, at 5. Had it done so, he says he "would have very likely satisfied the standard for preemption[.]" *Id.* at 6. Defendant insists that, without the undisclosed contracts, he could not prove to the Court that Plaintiff was attempting to "prosecut[e] a suit solely under state law which is blatantly illegal under federal law." *Id.*

We will not indulge in further efforts to explain to Defendant what has already been extensively explained to him by this Court and by the Seventh Circuit. Simply put, his arguments do not hold water, in that they fail to establish a basis for federal question jurisdiction under well-established principles of law.

B. *Defendant's Motion is Untimely*

Even if Defendant had shown an entitlement to relief on substantive grounds, his motion should be denied because it was filed beyond the deadline for such.

Federal Rule of Civil Procedure 60(c)(1) requires motions for relief on the grounds of fraud, misrepresentations, or misconduct to be made "no more than a year after the entry of judgment or order or the date of the proceeding." Here, Defendant filed his Motion for Relief on July 19, 2019, seeking relief from our Order on Costs and Fees, entered exactly one year earlier on July 19, 2018. At first glance, that may seem to satisfy the timeframe contemplated by Rule 60.

However, a closer examination reveals that Defendant's Motion for Relief seeks to vacate our finding that he had no objectively reasonable basis for removal and subsequent decision to award costs and fees. These conclusions were reached in our June 7, 2018

Remand Order, not in our subsequent Order on Costs and Fees. The latter Order merely approved, as revised, Plaintiff's itemized costs and fees—an assessment unchallenged by Defendant.

By failing to move for relief within one year of the issuance of our Remand Order, Defendant has failed to comply with the timetable set out in Rule 60(b)(1) and his motion must therefore be denied.

## **CONCLUSION**

For the reasons set forth herein, Defendant's Motion for Relief, Dkt. 42, and Motion for Evidentiary Hearing, Dkt. 62, are **DENIED.**

IT IS SO ORDERED.

Date: 12/26/2019

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Phillip J. Fowler
SMITHAMUNDSEN LLC (Indianapolis)
PFowler@salawus.com

W. Brent Gill
SMITH LAW SERVICES PC
wbrentgill@comcast.net

Philip J. List
SMITHAMUNDSEN LLC (Indianapolis)
plist@salawus.com

Debra Ann Mastrian
SMITHAMUNDSEN LLC (Indianapolis)
dmastrian@salawus.com

Suzannah Wilson Overholt
SMITHAMUNDSEN LLC (Indianapolis)
soverholt@salawus.com

Jason M. Smith
SMITH LAW SERVICES, P.C.
jason.smith@smithlawservices.com