UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JACKSON COUNTY BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01346-SEB-MPB |
| | ) | |
| MATHEW R DUSABLON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION AND ORDER ON OUTSTANDING MOTIONS**

This matter is before the Court on five outstanding motions. The Honorable Sarah Evans Barker has assigned this matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation on four of these matters: (1) Plaintiff's *Motion for Sanctions* (Docket No. 48), (2) Defendant's *Amended Motion to Dismiss or Strike JCB's Motion for Sanctions* (Docket No. 54), (3) Plaintiff's *Second Motion for Sanctions* (Docket No. 68), and (4) Plaintiff's *Emergency Motion to Enjoin Proceedings of the [State Court]* (Docket No. 67). (Docket No. 51; Docket No. 76; Docket No. 77). The undersigned will provide recommendations on each of these motions below. Defendant's *Motion for Extension of Time to File Response to Second Motion for Sanctions* (Docket No. 71), has also been referred to the Magistrate Judge.

On February 28, 2018, Plaintiff Jackson County Bank ("JCB") initiated this action in Jackson Superior Court I (Indiana), charging Defendant with breach of a covenant not to compete, breach of fiduciary duty, and other business torts created by state and common law. (Docket No. 1-2). On May 2, 2018, Defendant, DuSablon, removed this case from the Jackson Superior Court I purportedly invoking this Court's subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, based on the Securities Exchange Act. (Docket No. 1-3).

On May 11, 2018, JCB promptly sought to remand the matter, "based on the obvious: Plaintiff's complaint includes only state law claims." (Docket No. 75 at ECF p. 3; Docket No. 9; Docket No. 10). This Court agreed with Plaintiff because the case did not arise under federal law:

> This Court has subject matter jurisdiction of all civil actions "arising under" federal law. 28 U.S.C. § 1331. A case[] "arises under" federal law if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial federal question." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983).

(Docket No. 19 at ECF p. 4). In applying the well-pleaded complaint rule, Defendant's use of federal question jurisdiction was rejected because a federal question was not pled in the Complaint, Plaintiff did not seek to enforce any liability or duty created by the Securities Exchange Act, and Defendant's preemption defense did not confer federal question jurisdiction. (Docket No. 75 at ECF pp. 3–43; Docket No. 19 at ECF pp. 6–9). Further, the Remand Order held that "clearly established law demonstrated that [Defendant] had no basis for removal," which made the removal "objectively unreasonable." (Docket No. 19 at ECF p. 15). Thus, the order awarded Plaintiff a reimbursement of its costs and fees resulting from the wrongful removal, noting that the analysis of the same "was not a close question" given Defendant's "obviously deficient arguments." (Docket No. 19 at ECF p. 16). On July 19, 2018, DuSablon was ordered to pay JCB the amount of $9,035.61, comprised of $8,776 in attorney fees and $259.61 in costs ("District Court Fee Order"). (Docket No. 25).

On August 20, 2018, Defendant filed a Notice of Appeal challenging this Court's Remand Order as well as the Order on Costs and Fees. (Docket No. 26). On February 6, 2019, the Seventh Circuit issued its mandate dismissing the appeal and stated: "An ordering remanding

a case to the State court from which it was removed is not reviewable on appeal or otherwise."

(Docket No. 32). In affirming this Court's award of costs and fees the Seventh Circuit held:

> [W]e find no abuse of discretion, as we agree that DuSablon lacked an objectively reasonable basis to remove this case to federal court. The impropriety of removal, as the district court observed, was "not a close question." JCB did not plead any federal claim nor is any federal question apparent from the face of its complaint. *See Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000). The complaint is based entirely on state law and any potential federal defense cannot form the basis for removal. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 723 (7th Cir. 2017). DuSablon nonetheless argues that JCB's state law claims involve significant questions of federal securities laws. But DuSablon cannot manufacture a basis for removal by injecting federal issues into a case under these circumstances. *See Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 589 (7th Cir. 2016) (holding in a breach of contract action that an allegation that a defendant violated federal statutes is insufficient to create subject-matter jurisdiction). This is particularly so because, as the district court observed, DuSablon cited no cases supporting his position nor attempted to apply controlling law[.]

*Jackson Cty. Bank v. DuSablon*, 915 F.3d 422, 424 (7th Cir. 2019). On April 22, 2019, the Seventh Circuit entered an order awarding JCB $17,750 in fees and $416.99 in costs ("Appellate Court Fee Order") to be paid within 60 days. (Docket No. 35).

As of August 2019 DuSablon had not paid either the District Court Fee Order or the Appellate Court Fee Order. (Docket No. 48 at ECF p. 2). After informally conferring with Plaintiff's counsel regarding the payment, to no avail, JCB filed an action to enforce the judgments by filing a verified petition for enforcement of a foreign judgment in Jackson County Superior Court ("Enforcement Action").

On July 19, 2019, DuSablon filed a *Motion for Relief* (Docket No. 42) from this Court's District Court Fee Order, contending that Plaintiff had intentionally concealed relevant contracts that "make it clear that the claims asserted by the Plaintiff in their [*sic*] Complaint do not contain

federal questions of law, and as such, [Defendant did] objectively have a reasonable basis for filing to have this matter removed to federal court and he should not have had attorney fees and costs awarded against him." (Docket No. 42 at ECF p. 2). In rejecting DuSablon's request, the Court stated:

> Defendant's motion lacks any legal support for this theory. In lieu of a legal analysis, Defendant devotes the majority of his briefing to a series of accusations against Plaintiff and its counsel. We thus adopt our prior rulings as well as those of the Seventh Circuit in denying Defendant's motion.

(Docket No. 75 at ECF pp. 9–10).[1] The Court further noted that DuSablon misrepresented both the Indiana Trial Rules of Procedure and the facts surrounding the discovery process, which he relied on for his only argument that JCB "intentionally concealed" contracts that made his basis for removal objectively reasonable. (Docket No. 75 at ECF pp. 10–11). The Court held that "this is, once again, 'not a close question.'" (Docket No. 75 at ECF p. 11). Even if DuSablon had shown an entitlement to relief on substantive grounds, the Court held that his motion would still require denial because it was filed more "'than a year after the entry of judgment or order or the date of proceedings'" a violation of Federal Rule of Civil Procedure 60(c)(1). (Docket No. 75 at ECF p. 12).

## I.    Motions for Sanctions (Docket No. 48; Docket No. 68)

JCB's first *Motion for Sanctions* requests an order: (1) awarding JCB its attorneys' fees, costs, and expenses associated with this motion and responding to DuSablon's *Motion for Relief*; (2) assessing a fine against DuSablon's counsel, James M. Smith, payable to the Clerk of the Court; and (3) ordering that Smith attend an ethics course on professionalism approved by the

---

[1] On October 9, 2019, DuSablon also filed a *Motion for Evidentiary Hearing* (Docket No. 62) on his *Motion for Relief from Judgment*. The Court denied that request, concluding that "an evidentiary hearing is not necessary in resolving the motion." (Docket No. 75 at ECF p. 1).

Indiana Disciplinary Commission and provide the Court with verification of the course. (Docket No. 48 at ECF p. 13). JCB's second *Motion for Sanctions* reiterates some of these requests, but also requests an order: (1) awarding JCB its attorneys' fees, costs, and expenses associated with the second motion and responding to DuSablon's *Motion for Evidentiary Hearing*. (Docket No. 68 at ECF p. 14). Both motions seek sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and this Court's inherent authority.

### a. Standard of Law

Rule 11 provides that when an attorney signs a filing presented to the Court, the attorney certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. . ." that the filing:

> (1) is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
> (3) the . . . factual contentions have evidentiary support. . .

Fed. R. Civ. P. 11(b). Rule 11(c) empowers the district court to impose sanctions if, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated. Fed. R. Civ. P. 11(c)(1). If there are grounds for sanctions, the court has a duty to sanction the opposing party (or its counsel). *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Rule 11 expressly allows the imposition of either monetary sanctions or non-monetary sanctions, or both. *See Fries v. Helsper*, 146 F.3d 452, 459 n. 6 (7th Cir. 1998). The fine should aim to deter repetition of the inappropriate conduct.

An attorney is required to reasonably investigate the truthfulness of statements presented to the court. *CMG Worldwide, Inc. v. Glaser*, 92 F. Supp. 3d 839, 845 (S.D. Ind. 2015) ("[I]t is

not enough that the attorney's subjective belief and purpose are innocent; it is also necessary that such mental state be based upon reasonable inquiry, objectively analyzed, into the basis for the facts alleged and into the law") (quoting *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993)). Unsubstantiated allegations of fraudulent conduct against another member of the bar are grounds for Rule 11 sanctions. *Williams v. Fla. Health Scis. Ctr., Inc.*, 2007 WL 641328, at *3 (M.D. Fla. Feb. 26, 2007), *subsequently aff'd*, 293 F. App'x 757 (11th Cir. 2008).

Under 28 U.S.C. § 1927, the district court has the authority to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." *Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010). Sanctions are warranted under § 1927 "if the attorney has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice. . . or where a claim [is] without a plausible legal or factual basis and lacking in justification." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 708 (7th Cir. 2014) (citation and quotation marks omitted); *Jolly Group, Ltd v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). Section 1927 is meant to deter abusive litigation practices by attorneys and to make them bear the unnecessary costs associated with their actions. *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005). An award under § 1927 is not punitive, it is compensatory. *Shales v. General Chauffeurs, Sales Drivers & Helpers Local Union No. 330*, 557 F.3d 746, 749 (7th Cir. 2009).

A district court also has an inherent power to sanction a party or its attorney who "'has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401–02 (7th Cir. 2015) (quoting *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009)). Sanctions are appropriate when a party

or his counsel acts in "bad faith by delaying or disrupting the litigation," impedes or hampers enforcement of a court order, or defiles the justice system. *Chambers*, 501 U.S. at 46 (quotations omitted). "This power is 'permissibly exercised not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court.'" *Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 230 F. Supp. 3d 896, 907 (N.D. Ill. 2017) (quoting *Salmeron*, 579 F.3d at 797). This district court can use its inherent authority to fashion appropriate sanctions for conduct that abuses the judicial process. *Chambers*, 501 U.S. at 44–45. The inherent power of the court can be used when "neither [a] statute nor the Rules are up to the task" or where there is sanctionable conduct under the Rules that is intertwined with conduct that only the court's inherent power can address. *Id.* at 50–51.

### b. *Analysis*

Turning to the first *Motion for Sanctions* (Docket No. 48), JCB argues that DuSablon's *Motion for Relief* makes false and unsupported allegations regarding JCB and its counsel. JCB argues that Smith misrepresented the factual record in an attempt to portray JCB as intentionally concealing discovery. (Docket No. 48 at ECF p. 9). JCB argues that this behavior is not isolated to just the instant briefing, but instead is representative of Smith's management of this case both within federal and district court.

Instead of responding to JCB's motion Smith filed an *Amended Motion to Dismiss or Strike* JCB's motion. (Docket No. 54). Smith argues that JCB fails to "substantially comply" with Rule 11's "warning-shot" requirement. Smith continues to assert that JCB, and its counsel, have engaged in intentional misrepresentation and misdirection and argues that the filing of this motion for sanctions is further evidence of those transgressions. (Docket No. 54 at ECF p. 2).

Smith asserts that JCB fails to comply with Fed. R. Civ. P. Rule 11 and S.D. Local Rule 7-1(g). (Docket No. 54 at ECF pp. 1–7). Rule 11(c)(2) sets forth the following procedural requirements for a party's motion for sanctions:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2). The rule requires the "motion" to be served, but controlling Seventh Circuit case law has held that a letter that explains the grounds for sanctions and provides more than 21 days to remedy the problem constitutes "substantial compliance" to satisfy Fed. R. Civ. P. 11(c)(2). *See Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003).[2]

On July 31, 2019, JCB's counsel sent Smith a notice, by certified mail and email, advising that if the *Motion for Relief* was not withdrawn within 21 days, JCB would move for sanctions under Rule 11 and for attorneys' fees under 28 U.S.C. § 1927. (Docket No. 48 at ECF p. 3; Docket No. 48-2). The certified mailing was returned. Smith had a new mailing address but had not provided any formal notice of the same to JCB. (Docket No. 48 at ECF p. 3). On August 5, 2019, JCB's counsel sent a follow-up letter by certified mail and email, advising that the prior certified mailing had been returned, enclosing another copy of the Rule 11 notice, and, again,

---

[2] The Seventh Circuit has also warned that "[p]arties and district courts that rely on a theory of substantial compliance should understand that, at least in the present landscape [the Seventh Circuit is the only circuit that permits "substantial compliance"], they are inviting possible *en banc* and/or Supreme Court review of the question." *Northern Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 888 n. 5 (7th Cir. 2017).

requesting a call to discuss the matter. (*Id.*, Docket No. 48-3). Neither of JCB's counsel requests for a call were answered by Smith. (Docket No. 48 at ECF p. 3).

The July 31, 2019, letter referenced DuSablon's July 19, 2019 Verified Motion for Stay of Execution of Judgment[3] and provided that JCB intended to file a Rule 11 motion if that motion was not withdrawn. (Docket No. 48-2 at ECF p. 2). JCB stated its position that DuSablon's motion violated Rule 11 for several reasons, including: (1) DuSablon had already appealed the previous orders from the district court; (2) the claim that JCB committed fraud is wholly unsupported; (3) the motion misrepresented the factual record to the court; and (4) even if there was a basis for DuSablon's motion, the motion was not timely filed. (Docket No. 48-2 at ECF pp. 3–4). The letter concluded that JCB "request[s] that [Smith] withdraw the [motion] within 21 days from receipt of this letter. If you fail to do so, we will seek sanctions. . . As required by the Local Rules, we would like to schedule a call to discuss this matter with you. Please let us know your availability for such a call." (Docket No. 48-2 at ECF p. 5). On August 30, 2019, having received no communications from Smith, JCB filed the motion for sanctions as it warned it would do.

Smith argues the letter does not substantially comply with Rule 11 because the letter "exclusively" dealt with an assertion that the motion was frivolous and "did not prepare Attorney Smith for an onslaught of accusations that he is acting unprofessionally and uncivilly." (Docket No. 54 at ECF p. 4). Smith argues the letter did not prepare him for the (as he argues, false) comments regarding his conduct before the state court in this matter and three non-related matters. (Docket No. 54 at ECF p. 5) ("Frankly, had Attorney Smith known that his other clients might have their cases or proceedings affected, he would have at least had to have considered

---

[3] The motion's title was later revised to the current *Motion for Relief*.

withdrawing his motion or perhaps seeking injunctive relief, but it was an opportunity not afforded him.").

      The undersigned finds that the letter did substantially comply with Rule 11's warning-shot requirement. Unlike *Northern Illinois Telecom, Inc.*, where the Seventh Circuit held substantial compliance was not met, here JCB specifically gave notice that if the motion was not withdrawn within 21 days from receipt of the letter, a motion for sanctions would be filed. 850 F.3d at 888. In explaining the purpose of adding the warning-shot/safe-harbor procedure in Rule 11(c)(2), the Advisory Committee provided:

> . . . These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position *or to acknowledge candidly that it does not currently have evidence to support a specified allegation*. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment (emphasis added). In other words, the purpose of the warning-shot requirement was to avoid the lose-lose scenario where, without warning, one party filed a motion for sanctions and the accused party was put in the untenable position of either defending his previous questionable filing or conceding the filing and risking that being viewed as evidence of a violation of Rule 11. In his briefing, Smith admits that upon receipt of the July 31, 2019, letter he "in good faith re-analyzed his document and the overall situation to determine if the evidence available would demonstrate fraud in this instance and whether that fraud prevented DuSablon from properly advancing his claims and defenses. He concluded his opinion was the same as at the time of filing." (Docket No. 54 at ECF p. 4). Thus, it is evident that JCB's letter substantially complied with Rule 11 and permitted Smith ample

time to consider withdrawing his document. It is also notable that Smith made no attempt to meet and confer with JCB's counsel, despite the letter's directive to do the same. S.D. Ind. Local Rule 7-1(g).

Given the expansive arguments in each parties' briefing, the undersigned finds it necessary to remind the parties of the limited scope of this matter's litigation in federal court. This case was initiated and, now, continues in state court. DuSablon removed it here, improperly. (Docket No. 19). That remand order was improperly appealed to the Seventh Circuit. (Docket No. 32). DuSablon most recently challenged that order, unsuccessfully (Docket No. 75 at ECF p. 6), in the *Motion for Relief* (Docket No. 42), which is the filing in question for the first *Motion for Sanctions.* JCB has raised issues—both in its first and second motions for sanctions—with Smith's attacks against Plaintiff, its counsel, the state court, and specific staff members of the state court. Other briefing has discussed Smith's litigation with other clients. The undersigned recognizes that many of these issues have been raised out of necessity because Smith raises these issues as bases for relief in both the *Motion for Relief* and the *Motion for Evidentiary Hearing*. To the extent JCB calls these issues into question because they served no basis for the underlying motions, that is within the jurisdiction of the undersigned to consider. However, to the extent JCB seeks the undersigned to make a finding as to the impropriety of these acts or to sanction Smith for these acts, these issues are beyond the jurisdiction of this Court to consider. Fed. R. Civ. P. Rule 11, 28 U.S.C. § 1927, and this court's inherent authority to award sanctions for missteps in this case do not require or permit the Court to consider "other bad acts" that occurred outside the jurisdiction of this Court.[4]

---

[4] To the extent that Smith suggests that referring to his previous litigations, with other clients, somehow prejudiced those clients is perplexing given that the information is a matter of public record. The dockets and filings are available to the public.

I find that Smith did violate Rule 11 in filing his *Motion for Relief* as it was neither warranted by existing case law or by a nonfrivolous argument for extending or establishing new case law and many of the factual contentions made in the motion did not have evidentiary support. As discussed in greater detail below, Smith has stepped beyond the bounds of zealous advocacy and has engaged in not only utterly misleading and unsupported factual contentions but, in some cases, outright misrepresentations.

Rule 11 sanctions are appropriate when pleadings, written motions, or other papers are not supported by existing law and facts. Fed. R. Civ. P. 11(b)–(c). In the *Motion for Relief* and corresponding reply Smith asserts that JCB intentionally concealed two contracts until after this Court remanded the case to state court and awarded fees and costs to JCB for the remand briefing. (Docket No. 42). Smith asserts that the Indiana Trial Rules required these contracts to be attached to the original complaint and that, if they were, this Court would have had federal question jurisdiction. He asserts that he believes "that these agreements were intentionally concealed by JCB until after any matter relating to federal question was disposed of as they were conveniently disclosed to DuSablon" after this Court's "entry of the Order on Plaintiff's Petition for Costs and Fees." (Docket No. 42 at ECF p. 5). Smith asserts "[t]he concealment of [the contracts], however, would allow JCB to avoid being subjected to federal court jurisdiction and the appropriate federal regulatory bodies that they agreed to be bound by within the terms of the two (2) undisclosed contracts." (Docket No. 42 at ECF p. 5). He concluded:

> Had there not been this extreme misrepresentation to the Court regarding the existence of these other two (2) pertinent contracts revolving around DuSablon's working relationship with JCB, DuSablon would have been able to meritoriously maintain that his claim that he did have a reasonable legal basis for filing for removal and no attorney fees or costs would have been awarded in Plaintiff's favor.

(Docket No. 42 at ECF p. 9).

In the reply to the *Motion for Relief* Smith repeatedly accused JCB of engaging in multiple deceptive and misdirecting statements from JCB representatives and counsel "designed to trigger certain actions which JCB could then falsely represent to obtain sanctions and contempt orders, again without an opportunity of any significance to object or respond." (Docket No. 47 at ECF p. 4). Ultimately, DuSablon sought to vacate the Court's June 7, 2018, finding that he had no objectively reasonable basis for removal and subsequent decision to award costs and fees pursuant to Federal Rule of Civil Procedure 60(b)(3) due to the fraud, misrepresentation, or other misconduct of JCB in concealing the agreements.

Here, Smith's assertion that JCB intentionally concealed the two agreements in order to avoid federal question jurisdiction is not well grounded in fact or law. The Court commented on this in denying the *Motion for Relief*, stating:

> We pause before finalizing our holding here to address Defendant's sole ground for his averment that the contracts were "intentionally concealed" by Plaintiff. This theory rests on Defendant's construction of the Indiana Trial Rules of Procedure. According to Defendant, these rules require all "relevant" contracts to be attached to a complaint alleging breach of contract. Even if this were somehow an avenue to relief, *it is a clear misrepresentation of the Indiana Trial Rules, which require that a complaint founded on written instrument to include a copy thereof*. Ind. R. Trial. Proc. 9.2(A).

(Docket No. 75 at ECF p. 10) (emphasis added).

> Plaintiff's Complaint does *not* seek to enforce or litigate the terms of the Subscriber Agreement with INVEST or Defendant's employment agreement with INVEST. Perhaps these agreements will ultimately prove relevant to acquiring the full understanding of the scope of the relationship between the parties, but they are not instruments upon which Plaintiff's claims are or were founded and thus Plaintiff had no duty to include them as a part of the Complaint.

(*Id.* at ECF pp. 9–10) (emphasis in original).

Thus, JCB did not intentionally conceal the agreements by not attaching them to the complaint. Moreover, DuSablon did not request any documents from JCB until June 27, 2018, nearly three weeks after the Remand Order was entered. (Docket No. 48 at ECF p. 9). JCB timely responded on July 25, 2018, and produced the requested documents, including the agreements. (Docket No. 48 at ECF p. 9). *See also* (Docket No. 75 at ECF p. 11) ("We are informed that Plaintiff did timely furnish the contracts upon Defendant's request (which he did not serve until after remand) in the course of discovery, i.e., the appropriate procedural mechanism enabling parties to seek and receive relative documents.").[5] The evidence overwhelmingly supports that JCB did not intentionally conceal these two agreements.[6] To

---

[5] It is also notable that Smith waivers in his claim that DuSablon did not know about the agreements prior to their July 24, 2018 disclosure. As the Court noted in its entry on the *Motion for Relief*:

> Defendant's briefs are filled with contradictory and confusing versions of the facts—for example, he insists that Plaintiff intentionally concealed contracts that were "unknown" to him, while simultaneously arguing that he dedicated ten years of his career to ensuring the parties were in compliance with those very contracts—as well conclusory statements of law that he simply states without explanation. Defendant's arguments are so muddled that [it] is unclear whether he is at any given moment arguing that federal question jurisdiction does in fact exist, or that it does not exist but that it was reasonable for him to believe that it did.

(Docket No. 75 at ECF p. 9 n. 5).

[6] Despite the clear showing of the evidence, even throughout the briefing on the motion for sanctions, Smith continues to stand by his averments that JCB and its counsel have intentionally concealed these agreements:

> There is no question that JCB had the [agreements] in its possession when the state court suit was filed and, more importantly, when DuSablon filed his motion to dismiss and his response to JCB's Motion to Remand. More importantly, it had the document when Attorney Mastrian told Attorney Smith that "FINRA does not apply," leading Attorney Smith to the assumption that no contractual obligations existed which would require FINRA arbitration.

repeatedly contend otherwise without any factual evidence violates Rule 11(b) and merits

sanction.

DuSablon's *Motion for Relief* was also not warranted by existing case law or by

nonfrivolous argument for extending or establishing new case law. The Court made clear in its

entry on *Motion for Relief*:

> Assuming *arguendo* Plaintiff had intentionally concealed the contracts, Defendant's Motion for Relief still must be denied. Because Defendant's motion recapitulates "legally deficient" arguments already rejected by this Court and the Seventh Circuit, this is, once again, "not a close question."
>
> . . .
>
> We will not indulge in further efforts to explain to Defendant what has already been extensively explained to him by this Court and by the Seventh Circuit. Simply put, his arguments do not hold water, in that they fail to establish a basis for federal question jurisdiction under well-established principles of law.

(Docket No. 75 at ECF pp. 11–12). Finally, DuSablon's *Motion for Relief* was not filed within

one year of the issuance of the Remand Order and was, thus, not timely filed pursuant to Rule

60(b)(1). (Docket No. 75 at ECF pp. 12–13). Smith's filing of the *Motion for Relief* had no

reasonable factual basis and is not based on a legal theory that had a reasonable chance of

success and thus Rule 11 sanctions are appropriate.[7]

Turning to the second *Motion for Sanctions*, JCB seeks sanctions for DuSablon's October

9, 2019, *Motion for Evidentiary Hearing* (Docket No. 62), also filed by Smith. (Docket NO. 68).

---

> DuSablon and Attorney Smith believe they can clearly prove that the withholding of the contracts was not unintentional.

(Docket No. 63 at ECF p. 4).

[7] *See also* (Docket No. 75 at ECF p. 10 n. 6) ("Defendant's motion is little more than a legal tirade based on irrelevant facts and erroneous legal theories. Worse, the tenor is a distraction from any legitimate substantive issues before us.").

JCB argues the *Motion for Evidentiary Hearing* contains wholly unsupported slanderous and false allegations of misconduct by JCB, its employees, attorneys, and members of the judiciary and legal community. (Docket No. 68 at ECF p. 1).[8]

Like the *Motion for Relief*, much of Smith's *Motion for Evidentiary Hearing* is an inappropriate attack on this matter's state court proceedings, including the rulings, the state court staff's purported manipulation of the record, and JCB's representatives and counsel's purported threats to DuSablon and Smith. To say Smith's accusations, as well as the tone throughout his motion, cause concern, is an understatement. Even worse, however, is that these accusations are completely irrelevant to any matter before this Court.

Smith again violates Rule 11 by continuing to misrepresent the factual record to the Court. In his reply to the *Motion for Hearing*, Smith states: "DuSablon Did Not 'Know' the Networking Agreement or Employment Agreement Existed . . ." (Docket No. 47 at ECF p. 2). Yet, in the *Motion for Evidentiary Hearing* Smith asserts:

> DuSablon *has never denied knowledge* of an "agreement" or "contract" between JCB and INVEST and, in fact, acknowledged the obvious reality in his deposition, and numerous filings, that the two companies entered a networking or referral agreement.
> It is the detailed terms and provisions, especially the provision requiring JCB's submission to FINRA and its arbitration, in contradiction of Attorney Mastrian's initial statement that "FINRA does not apply," of which DuSablon was not aware.

(Docket No. 62 at ECF p. 2) (emphasis added).

Smith had a duty to make a reasonable inquiry before making allegations of fraudulent concealment in his *Motion for Relief. See Stewart v. RCA Corp.*, 790 F.2d 624, 633 (7th Cir.

---

[8] Smith does not contest the second motion's compliance with Rule 11(c)(2) and the record shows a draft of the motion was served with a letter on or around November 5, 2019. (Docket No. 68-1). The motion was ultimately filed on November 27, 2019. (Docket No. 68).

1986) (admonishing lawyers that they must "think first and file later, on the pain of personal liability."). While an attorney may rely upon his client for information, if the information is inaccurate, the attorney has a duty to correct any inaccurate statements and dismiss groundless claims. *See, e.g., Lorentzen v. Anderson Pest Control*, 64 F.3d 327 (7th Cir. 1995). Smith's factual statements in the *Motion for Evidentiary Hearing* directly contradict his statements in the briefing on the *Motion for Relief*, yet he makes no attempt to correct the contradictions. In fact, despite his concession that DuSablon knew of the documents he continued to push forward in his *Motion for Evidentiary Hearing* for the conclusion that JCB has engaged in "an intentional campaign to silence or discredit DuSablon." (Docket No. 62 at ECF pp. 4–5).

Smith's response to the second motion for sanctions[9] continues to muddy the waters as to what his client knew prior to filing the *Motion for Relief* and *Motion for Evidentiary Hearing*. (Docket No. 73 at ECF p. 11). Smith asserts DuSablon's deposition testimony reflected that DuSablon could not remember if he had seen a contract between JCB and INVEST, but if JCB's counsel had merely provided the agreements during the deposition, DuSablon could have "answered unequivocally that he had never seen the Networking Agreement and did not recall seeing the Employment Agreement while acknowledging the signature appears to be his[.]" (Docket No. 73 at ECF p. 11). These statements in no way correct or explain Smith's

---

[9] Pursuant to Local Rule 7-1(c)(3)(A), Smith's response to the *Second Motion for Sanctions* was due December 11, 2019. On December 11, 2019, Smith filed a *Motion for Extension of Time to File a Response to the Second Motion for Sanctions* (Docket No. 71), requesting until December 16, 2019, to respond. The request cited an extension was necessary as Smith (and his staff) inadvertently calendared the motion wrong and Smith needed additional time to respond. The request violated both Local Rules 6-1 and 7-1 in several aspects, most noticeably by not filing the request three business days prior to the deadline that Smith sought relief from and by not indicating whether Smith had sought opposing counsel's consent prior to filing the routine motion. Nonetheless, JCB's response indicated it did not object to the request. (Docket No. 72 at ECF p. 1). Smith's request is **GRANTED**.

contradictory statements to this Court where in one filing he states his client did not know documents existed and in a later filing he states his client has *never* denied his knowledge of those same documents.

In Smith's response to JCB's *Second Motion for Sanctions* he asserts that JCB and its counsel should be sanctioned pursuant to Rule 11 and that Smith is not required to follow the "warning-shot" rule in response to such a motion. Smith cites no authority for his legal proposition. Indeed, there is none. A request for sanctions pursuant to Rule 11 requires: (1) the motion to be made separate from other motions or requests and the motion must describe the specific conduct alleged to violate subdivision (b) and (2) the motion may not be presented to the court prior to adhering to the twenty-one-day safe harbor rule. *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999). Smith has not met either requirement as his sanctions request are not in a separate motion and he has not allowed opposing counsel the requisite 21-days to withdraw or correct the challenged behavior.

In response to both motions for sanctions, like Smith's other arguments, he implores that an evidentiary hearing is necessary to satisfy his client's "due process rights." *See, e.g.*, (Docket No. 54, Docket No. 62, Docket No. 73). There is no requirement that the Court hold a hearing on a motion for sanctions. Due process is satisfied if there is an opportunity for the issues to be fully briefed by the parties. *See* Fed. R. Civ. P. 11(c)(3) (requiring that party have reasonable opportunity to respond); *see also Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1494–95 (7th Cir. 1989) (party not entitled to evidentiary hearing before imposition of sanctions). Smith has responded to both motions for sanctions and the undersigned has considered those responses. A hearing is not required.

Considering both of JCB's sanction motions together, and considering the *Motion for Relief* and *Motion for Evidentiary Hearing* together, I also find that Smith has violated Section 1927 of the Judicial Code by unreasonably and vexatiously multiplying the proceedings before this Court. I find that, after losing on the initial remand order and the appeal to the Seventh Circuit (and incurring attorneys fees and costs in both courts) the filing of the *Motion for Relief* and the *Motion for Evidentiary Hearing* if not frivolous, was at least so lacking in merit that its pursuit by Smith indicates a motive to harass. *See Carr v. Tillery*, 591 F.3d 909, 920 (7th Cir. 2010). Like *Carr*, such a conclusion is supported by the vitriolic tone and the character of Smith's briefs in this court. *Id.* Moreover, the inclusion of irrelevant accusations that are both unsubstantiated and disconcerting is further support that these motions were presented to this Court unreasonably and vexatiously. As the Court earlier noted, neither the *Motion for Relief* nor the *Motion for Evidentiary Hearing* "convince us that Defendant can establish a legitimate basis for his belief that subject matter jurisdiction existed." (Docket No. 75 at ECF p. 10 n. 6). DuSablon's requests lacked any legal support for their theories and, instead, devote the majority of their briefing to a series of accusations against JCB, its counsel, and the state court.

Turning to the appropriate sanctions, Rule 11(c)(4) provides that a "sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Subsection (c)(4) also provides that permissible sanctions include "nonmonetary directives," "an order to pay a penalty into court," or an assessment of attorney's fees. 28 U.S.C. § 1927 states that an attorney "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of [conduct that violates the statute]." Sanctions are warranted under § 1927 "if the attorney has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for

the orderly process of justice . . . or where a claim [is] without a plausible legal or factual basis and lacking in justification." *Lightspeed Media Corp.*, 761 F.3d at 708 (citation and quotation marks omitted).

Pursuant to both of these authorities, the undersigned **RECOMMENDS** JCB's first and second *Motion for Sanctions* be **granted,** and the following sanctions imposed:

1. Smith be **ordered** to pay JCB's counsel attorney's fees and costs associated with the briefing of both motions for sanctions and in responding to the *Motion for Relief* and the *Motion for Evidentiary Hearing*. JCB's counsel shall file a Petition setting forth its fees and costs within **fourteen days** of the District Court's order on this report and recommendation. Smith may file a response, if any, to the Petition with **seven days** thereafter.

2. Smith be **ordered** to complete an at least six-hour applied professionalism continuing legal education course that has been accredited by the Indiana Commission for Continuing Legal Education within **six months** of the District Court's order on this report and recommendation. *See* Indiana Rules for Admission to the Bar and the Disciplinary of Attorneys, Rule 29. Smith shall file a notice to the Court immediately upon completion of the course.

3. In keeping with the Indiana Appellate Court's decision to send its opinion and the parties' briefs to the Indiana Supreme Court Disciplinary Commission, which has exclusive jurisdiction to discipline an attorney, where appropriate, for violations of the Rules of Professional Conduct (Docket No. 57-1 at ECF p. 3), the Clerk of this Court be **directed** to send a copy of this Report and Recommendation and the subsequent order, as well as the parties' briefings to the Indiana Supreme Court Disciplinary Commission.

(Docket No. 42, Docket No. 45, Docket No. 47, Docket No. 48, Docket No. 54, Docket No. 57, Docket No. 61, Docket No. 62, Docket No. 63, Docket No. 65, Docket No. 66, Docket No. 68, Docket No. 73, Docket No. 74).

## II.   Emergency Motion to Enjoin Proceedings of the Jackson County Superior Court I Under Cause No. 36D01-1907-CC-000349 (Docket No. 67)

DuSablon requests that this Court enter an order enjoining the proceedings of the Jackson County Superior Court I Under Cause No. 36D01-1907-CC-000349, pursuant to 28 U.S.C. § 2283, from proceeding further. (Docket No. 67). JCB opposes the request. (Docket No. 69). DuSablon has replied. (Docket No. 70). For the reasons that follow, I **RECOMMEND** that DuSablon's request be **denied**.

On July 19, 2018, this Court entered its District Court Fee Order (Docket No. 25), ordering DuSablon to pay JCB $8,776.00 in attorney fees and $259.61 in costs. After that order was unsuccessfully appealed to the Seventh Circuit, the Seventh Circuit issued its Appellate Court Fee Order on April 22, 2019, ordering DuSablon to pay JCB $17,750.00 in attorney fees and $416.99 in costs. Both the District Court Fee Order and the Appellate Court Fee Order were certified. On July 22, 2019, JCB filed an action to enforce the judgments by filing a verified petition for enforcement of a foreign judgment ("Petition") in Jackson County Superior Court, to which it attached a certified copy of the District Court Fee Order and the Appellate Court Fee order (the "Enforcement Action"). (Docket No. 67-2; Docket No. 69 at ECF p. 2). The state court ordered DuSablon to appear on October 7, 2019, for a proceedings supplemental hearing. (Docket No. 69 at ECF p. 3). On October 4, 2019, DuSablon filed a motion to vacate and dismiss or set aside the proceedings supplemental. (Docket No. 67-3; Docket No. 67-4). On October 27, 2019, the state trial court denied DuSablon's motion and set a subsequent hearing for December 2, 2019. (Docket No. 67-7). On November 26, 2019, DuSablon filed the instant "emergency"

request before this Court, seeking to enjoin the proceedings prior to the December 2, 2019, hearing. (Docket No. 67).

This Court's authority to grant an injunction of a state court proceeding, as DuSablon requests here, is governed by the Anti-Injunction Act. *See* 28 U.S.C. § 2283. Generally, under the Anti-Injunction Act, federal courts should not enjoin state court proceedings. *Id.*

Three exceptions to this general rule exist, but while DuSablon's request cites 28 U.S.C. § 2283 as the basis for his request, the motion does not make mention of which exception it invokes or that exception's applicability. He has not established that an injunction is appropriate, even if authorized by an Act of Congress.[10] He has also not shown that an injunction is necessary in aid of this court's jurisdiction, or would protect the court or effectuate its judgments. *Id.* These three exceptions must be applied narrowly. *Zurich Am. Ins. Co. v. Super. Ct. for the State of Cal.*, 326 F.3d 816, 824 (7th Cir. 2003). The latter exceptions, according to the Supreme Court, mean an injunction may be issued where "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coastline R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Id.* at 297.

I find that this case does not meet the exceptions outlined by the Anti-Injunction Act. This Court and the Seventh Circuit issued orders awarding attorney's fees. The Seventh Circuit

---

[10] While DuSablon makes passing reference to the All Writs Act, 28 U.S.C. § 1651(a), he has not established through developed argument its applicability. While the All Writs Act may be used to enjoin litigants from pursuing parallel litigation in a state court, "an injunction that halts state litigation is permissible only if it satisfies [the Anti-Injunction Act]." *Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481, 483 (7th Cir. 2015).

has previously acknowledged that state courts can register federal judgments. *Zuelzke Tool & Engineering Co., Inc. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 228 (7th Cir. 1991) (noting that the judgment creditor registered his federal judgment in Illinois state court). *See also, Stoll v. Gottlieb*, 305 U.S. 165, 170–71 (1938) (noting that it is well recognized that state courts must give full faith and credit to federal court judgments).

Further restraining this court is the Supreme Court's declaration that even though an injunction "*may* issue under the Anti-Injunction Act does not mean that it *must* issue." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 151 (1988) (emphasis in original). Principles of equity, comity, and federalism must also restrain a federal court when asked to enjoin a sate proceeding. *Mitchum v. Foster*, 407 U.S. 225, 243 (1972).

DuSablon cites two cases from the 1800s (both precede the aforementioned acts) and several out-of-circuit cases. Because these cases either do not address the controlling authority or are not binding on this Court, they are unhelpful to the undersigned's review. DuSablon does cite Seventh Circuit cases for the proposition that "[t]he federal court clearly retains jurisdiction, after remand, to consider collateral matters including an award of attorney fees under 28 U.S.C. § 1447(c)." (Docket No. 67 at ECF p. 9, citing *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363 (7th Cir. 2000)). *Hotline Indus., Inc.*, was addressing that a district court has jurisdiction to *award* attorney's fees under § 1447(c). *Id.* at 365. This Court did award attorney's fees, as did the Seventh Circuit. *Hotline Indus., Inc.*, and the other Seventh Circuit cases cite by DuSablon for this proposition is inapplicable to the issue of enforcement of those fee orders.[11]

---

[11] In his reply, DuSablon argues that because his *Motion for Relief* is still pending this Court has the exclusive jurisdiction related to the fee orders. Given that request was denied, this argument is now moot.

23

Finally, from the perspective of the undersigned, DuSablon already had an opportunity to litigate in state court the question of subject-matter jurisdiction and whether JCB properly "served" the Petition in the Enforcement Action. He may not "reopen that question in a collateral attack" in this Court. *Insurance Corp. of Ireland v. Compagnie des Bauxites d'Guinee*, 456 U.S. 694, 702 n. 9 (1982).

For all these reasons, the undersigned **RECOMMENDS** DuSablon's *Emergency Motion to Enjoin Proceedings* be **denied**. The undersigned notes that JCB's response includes a one-line request for attorneys' fees and costs associated with opposing the motion but cites no authority for its request. The undersigned **RECOMMENDS** no further fees and costs be awarded.

### III.    Conclusion

In sum, the Court makes the following **RECOMMENDATIONS**:

1. Plaintiff's *Motion for Sanctions* (Docket No. 48) be **GRANTED**, Defendant's *Amended Motion to Dismiss or Strike JCB's Motion for Sanctions* (Docket No. 54) be **DENIED**, Plaintiff's *Second Motion for Sanctions* (Docket No. 68) be **GRANTED**, and sanctions be awarded as recommended and explained, in detail, within this entry.

2. Defendant's *Emergency Motion to Enjoin Proceedings of the Jackson County Superior Court I Under Cause No. 36D01-1907-CC-000349* (Docket No. 67) be **DENIED**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of

good cause for such failure.

**SO RECOMMENDED.**

The Court **ORDERS** Defendant's *Motion for Extension of Time to File Response*

(Docket No. 71) be **GRANTED**.

**SO ORDERED.**

Dated: 1/10/2020

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Service made electronically to all ECF-registered counsel of record.